## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GRASSO ENTERPRISES, LLC d/b/a<br>ANNIE'S APOTHECARY,<br><br>*Plaintiff,*<br><br>v.<br><br>CVS HEALTH CORPORATION f/k/a CVS<br>CAREMARK, CAREMARK, LLC, and<br>CAREMARKPCS HEALTH, LLC,<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL NO.  SA-15-CV-427-XR |

## ORDER

On this date, the Court considered Defendants CVS Health Corporation, Caremark, LLC, and CaremarkPCS Health, LLC's Motion to Dismiss and Compel Arbitration (docket no. 44) and each party's subsequent responses (docket nos. 23, 24, 42, and 43).  The Court also considered Plaintiff Grasso Enterprises, LLC's Motion for Preliminary Injunction (docket no. 26) and the subsequent responses (docket nos. 33, 42, and 43).  After careful consideration, the Court will GRANT IN PART and DENY IN PART Defendant's Motion to Dismiss and Compel Arbitration and DISMISS AS MOOT Plaintiff's Motion for Preliminary Injunction.

## FACTUAL BACKGROUND

### I.    The relationship between the parties

Plaintiff Grasso Enterprises ("Grasso") owns two compounding pharmacies—one in Boerne, Texas and one in Kerrville, Texas.  Docket no. 1 at 2.  Both pharmacies are "in-network" pharmacies with Defendants CVS Health Corporation, Caremark, LLC, and CaremarkPCS Health, LLC ("CVS/Caremark").  *Id.* at 3.

The relationship between the two parties is governed by two agreements. In 2008, Grasso entered into a Provider Agreement with CVS/Caremark with respect to the pharmacy located in Boerne. Docket no. 44-2. Then, in 2014 Grasso entered into another Provider Agreement with respect to the pharmacy located in Kerrville. Docket no. 44-3. Both agreements are signed by Dr. Leigh Ann Grasso, an agent of Grasso, and an agent of CVS/Caremark. Docket nos. 44-2, 44-3. Both agreements incorporated by reference the terms of another document—the Provider Manual. *Id.*

The Provider Manual contains a provision that allows CVS/Caremark to amend the manual by giving the pharmacies notice of the terms of the amendment and specifying the date the amendment becomes effective. Docket no. 23 at 2. The provision also states that submitting claims to CVS/Caremark after the effective date of the amendment constitutes acceptance of the changes on the part of the pharmacy. *Id.* The Provider Manual has been revised in this manner a handful of times since 2008. Smith Dec. ¶ 11. Each time this occurs, a copy of the new Provider Manual is sent to all pharmacies. *Id.*

Each version of the Provider Manual provided to the Court contained an arbitration clause. *See* Pre. Inj. Hearing Plaintiff's Ex. A at 44; docket no. 44-4 at 37; docket no. 44-5 at 43; docket no. 44-6 at 50; docket no. 44-7 at 45. The most recent version of the Provider Manual governs this dispute. Grasso acknowledges that it received this version of the Manual when the Kerrville location joined the CVS/Caremark network in 2014. Pre. Inj. Hearing Trans. at 111. This version of the Provider Manual's arbitration provision states in relevant part:

> Any and all disputes between Provider and Caremark (including Caremark's employees, parents, subsidiaries, affiliates, agents and assigns (collectively referred to in this Arbitration section as "Caremark")[)], including but not limited to disputes in connection with, arising out of, or relating in any way to, the Provider Agreement or to Provider's participation in one or more Caremark

networks or exclusion from any Caremark networks, will be exclusively settled by arbitration. Unless otherwise agreed to in writing by the parties, the arbitration shall be administered by the American Arbitration Association ("AAA") pursuant to the then applicable AAA Commercial Arbitration Rules and Mediation Procedures (available from the AAA).

. . . .

**Arbitration with respect to a dispute is binding and neither Provider nor Caremark will have the right to litigate that dispute through a court. In arbitration, Provider and Caremark will not have the rights that are provided in court, including the right to a trial by judge or jury. In addition, the right to discovery and the right to appeal are limited or eliminated by arbitration. All of these rights are waived and disputes must be resolved through arbitration**.

. . . .

The above notwithstanding, nothing in this provision shall prevent either party from seeking preliminary injunction relief to halt or prevent a breach of this Provider Agreement in any state or federal court of law.

. . . .

The terms of this arbitration section apply notwithstanding any other or contrary provision of the Provider Agreement, including, but not limited to, any contrary language in any **Third Party Beneficiary** provision. This Arbitration section survives the termination of this Provider Agreement and the completion of the business relationship between Provider and Caremark. This arbitration is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16.

Docket no. 44-7 at 45–46 (emphasis in original).

## II.    The dispute that led to this suit

Grasso filed suit in this Court on May 22, 2015.  Docket no. 1.  Grasso seeks monetary damages and a variety of declaratory and injunctive relief.  *See* docket no. 25.  Grasso claims that CVS/Caremark's procedures for processing claims violate the Employee Retirement Income

Security Act (ERISA), the Patient Protection and Affordable Care Act (PPACA), and a U.S. Department of Labor regulation, 29 C.F.R. § 2560-503-1 ("Claims Regulation") that applies to both ERISA and PPACA. Docket no. 25 at 3. The Claims Regulation gives CVS/Caremark 30 days to pay, deny, or make inquiries on a group health benefits plan. 29 C.F.R. § 2560.503-1.

Grasso contends in its amended complaint (docket no. 25) that it is the practice of CVS/Caremark to not review claims, but to instead use a computerized automated system to process all claims, which creates an appearance of compliance with the Claims Regulation's 30-day time frame. Docket no. 25 at 4. But Grasso alleges that CVS/Caremark's practice is to choose to review claims that the automated system has previously approved *after* the 30-day period is over. *Id.* They supposedly do this by contacting pharmacies about previously approved claims and demanding reimbursements for amounts they previously paid to the pharmacy. *Id.* Grasso also contends that CVS/Caremark forcibly take back the money by withholding current and future claim payments that they owe the pharmacy under other, unrelated health plans. *Id.* at 9. Essentially, Grasso complains that CVS/Caremark unlawfully reserve unto themselves the ability to "untimely review and reverse claim decisions long after the statutorily mandated 30-day time window has closed" and then withholds other, unrelated money they owe Grasso to enforce this. *Id.* at 4, 9. Grasso also alleges in its amended complaint that CVS/Caremark have unilaterally purported to amend the in-network provider contract they entered into with Grasso and other pharmacies in a manner that affects the pharmacies' right to reimbursement. *Id.* at 6.

However, in their motion to dismiss and compel arbitration, CVS/Caremark tell a different story. Docket no. 44 at 5–9. They allege that they undertook a lawful audit of Grasso's two pharmacies—one that they were entitled to conduct based on the parties contracts with one

another.  *Id.*  When that audit revealed that Grasso had overbilled CVS/Caremark by over $1 million, Grasso allegedly refused to pay and filed this lawsuit instead.  *Id.* at 8.

### III.    Procedural background

CVS/Caremark filed their Motion to Dismiss and Compel Arbitration on July 20, 2015. Docket no. 16.  Grasso filed its response on August 31, 2015.  Docket no. 23.  CVS/Caremark filed their reply on September 8, 2015.  Docket no. 24.  Then, as the Court was considering the Motion to Dismiss and Compel Arbitration, Grasso filed an amended complaint that alleged CVS/Caremark had unlawfully retaliated against Grasso as a result of this lawsuit (docket no. 25) and filed a Motion for Preliminary Injunction (docket no. 26).  Grasso contends that CVS/Caremark unlawfully retaliated against Grasso by attempting to eject Grasso's pharmacies from the CVS/Caremark provider network.  Docket no. 26 at 4.  This is scheduled to occur on October 29.  *Id.*  Grasso asks the Court to halt this action by issuing a preliminary injunction.  *Id.* at 21.  This Court held a hearing on both the Motion to Dismiss and Compel Arbitration and the Motion for Preliminary Injunction on October 5, 2015.  Docket no. 29.

## MOTION TO DISMISS AND COMPEL ARBITRATION ANALYSIS

CVS/Caremark move to compel arbitration pursuant to the Federal Arbitration Act. Docket no. 44 at 7.  Grasso argues that the agreement to arbitrate is invalid and that the arbitration clause is unconscionable.  Docket no. 23 at 6, 9.

### I.    Choice of Law

As a preliminary matter, the Court must decide what law will apply to the dispute between Grasso and CVS/Caremark over arbitrability.  *See Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 257 (5th Cir. 2014).  The Federal Arbitration Act ("FAA") applies in this case because the agreements containing arbitration clauses are each "contract[s]

evidencing a transaction involving commerce." 9 U.S.C. § 2; *Glazer's, Inc. v. Mark Anthony Brands Inc.*, No. SA-11-CV-977-XR, 2012 WL 2376899, at *5 (W.D. Tex. June 22, 2012) (Rodriguez, J.). However, nothing in the FAA changes the background principles of state contract law regarding the scope of agreements and who is bound by them. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 624 (2009). Thus, state law is applicable in determining whether arbitration must be compelled. *Crawford*, 748 F.3d at 255, 257 (explaining that the Fifth Circuit's "prior decisions applying federal common law, rather than state contract law, to decide such questions . . . have been modified to conform with *Arthur Andersen*.").

A federal court sitting in diversity follows the choice of law rules of the state in which the court sits. *Crawford*, 748 F.3d at 258. This Court, then, follows the choice of law rules of the State of Texas. "Under Texas choice of law principles, contractual choice of law provisions are generally upheld." *Stinger v. Chase Bank, USA, NA*, 265 F. App'x 224, 228 (5th Cir. 2008). To determine the validity of contractual choice of law clauses, Texas courts use the standard set forth in the Second Restatement of Conflict of Laws ("Restatement"). *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex. 2002). In relevant part, the Restatement provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either:
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2) (1971).

The first exception (§ 187(2)(a)) is a weak and relaxed one. *Crawford*, 748 F.3d at 258. While a choice of law clause made "in the spirit of adventure or to provide mental exercise for the judge" will be rejected, the choice of law will be upheld if "the state of the chosen law has some substantial relationship to the parties or the contract." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 cmt. f. (1971). The substantial relationship may be created in many ways, including when "one of the parties is domiciled or has his principal place of business" in the chosen state. *Id.* The scope of the second exception (§ 187(2)(b)) is, according to the Restatement itself, difficult to define. *Id.* at cmt. g. Any fundamental policy that would be violated by applying the law of the chosen state must be substantial. *Id.* A state will apply its own legal principles in determining whether the violated policy is fundamental or substantial. *Id.* A fundamental policy is not violated simply because the outcome of the lawsuit in the two states would be different. *Id.* When the outcome of the lawsuit would be the same under the laws of either state, however, a fundamental policy is not violated. *Crawford*, 748 F.3d at 259.

Federal courts applying the Restatement standards have used choice of law clauses to determine the law under which to evaluate a motion to compel arbitration. *Crawford*, 748 F.3d at 259. In *Crawford*, CVS/Caremark sought to compel arbitration of the claims against them in a lawsuit brought by a group of Mississippi pharmacies. *Id.* In that case, the Fifth Circuit examined the Provider Agreements and Provider Manual—the very same documents and arbitration clause at issue in this case—signed by CVS/Caremark and the *Crawford* plaintiffs. *See id.* CVS/Caremark argued that Arizona law should apply because the documents contained a choice of law clause requiring the use of Arizona law. *Id.* at 257. The plaintiffs contended, without addressing the choice of law clauses or otherwise explaining why, that Mississippi law should apply. *Id.* at 257–58. The Fifth Circuit Court of Appeals held that there was a substantial

relationship between the parties or contract and the forum because CVS/Caremark's business operations were located in Arizona. *Id.* at 258. It also held that no fundamental policy of Mississippi was violated by using Arizona law because the lawsuit's outcome would be the same under either state's law. *Id.* at 259.

Here, the very same documents that were at issue in the *Crawford* case are before this Court. Both Provider Agreements clearly state that "the Agreement[s] will be construed, governed, and enforced in accordance with the laws of the State of Arizona." Docket no. 44-2; docket no. 44-3. Additionally, both parties agree that Arizona law applies. Docket no. 23 at 5 ("Plaintiff's PAs with Defendants have a reasonable relationship to Arizona. *See Crawford*, 748 F.3d at 258 (ruling under Mississippi choice-of-law rules that Arizona had a substantial relationship to Defendants' PAs with pharmacies in Mississippi and therefore upholding those PAs' choice of Arizona law). Accordingly, Arizona law applies to the threshold issue whether Caremark, L.L.C. and CaremarkPCS, L.L.C. have an arbitration agreement with Plaintiff."); docket no. 44 at 16 ("Here, the parties agreed that the Provider Agreement will be governed by the law of Arizona—a choice of law that the Fifth Circuit upheld in *Crawford*."). For these reasons, the Court will apply Arizona law in analyzing the arbitration clause.

## II.     Arbitration analysis

Both Arizona and federal policy strongly favor arbitration. *Grigson v. Creative Artists Agency LLC*, 210 F.3d 524, 526 (5th Cir. 2000); *Rancho Pescado, Inc. v. Nw. Mut. Life Ins. Co.*, 140 Ariz. 174, 181 (Ct. App. 1984). In considering a motion to compel arbitration under the FAA, courts engage in a two-step analysis. *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008). The first step is to determine whether the parties have agreed to arbitrate the dispute. *Id.* If the parties are found to have agreed to arbitrate the dispute, the court continues to

step two of the analysis.  *Id.*  The second step is to determine whether any federal statute or policy renders the claims nonarbitrable.  *Id.*  In the absence of a contrary federal statute, arbitration should be compelled in accordance with the FAA.  9 U.S.C. § 3.

A. Have the parties agreed to arbitrate the dispute?

First, a court must determine if the parties have agreed to arbitrate the dispute.  *Sherer*, 548 F.3d at 381.  This involves two factors: 1) is there a valid agreement between the parties to arbitrate and 2) does the dispute in question fall within the scope of that arbitration agreement? *Id.*

1. *Is there a valid agreement between CVS/Caremark and Grasso to arbitrate?*

This Court finds that there is a valid agreement between CVS/Caremark and Grasso to arbitrate disputes.  Grasso maintains that there is no valid agreement to arbitrate because the arbitration agreement is both illusory and unconscionable.  Docket no. 23 at 6, 9.  This Court—relying on the Fifth Circuit's decision in *Crawford*, which found the exact agreement at issue to be enforceable and not unconscionable—disagrees.  *See Crawford*, 748 F.3d at 263.

To begin, deciding this first step—whether or not there is a valid agreement to arbitrate between the parties—is a question for the Court to decide.  *Will-Drill Res., Inc. v. Samson Res. Co.*, 253 F.3d 211, 212 (5th Cir. 2003) ("[W]here the very existence of any agreement to arbitrate is at issue, it is for the courts to decide based on state-law contract formation principles.").  While Arizona law governs, "[i]n applying state law, however, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Webb v. Investacorp*, 89 F.3d 252, 258 (5th Cir. 1996) (internal citations omitted).

It is uncontested that the Provider Manual contains an arbitration clause and that both Grasso and CVS/Caremark are signatories to the two Provider Agreements that incorporate the terms of the Provider Manual by reference. *See* docket nos. 42 and 43 (both referring to the documents and neither advancing any sort of argument that Grasso never signed); *see also* docket nos. 44-2, 44-3. The FAA mandates that a court "shall" enter an order directing arbitration where the parties have entered into an arbitration agreement. 9 U.S.C. § 4. However, given that Grasso alleges the arbitration agreement is illusory and unconscionable, the Court's inquiry must not stop there.

Grasso first argues that the arbitration clause is unenforceable because it is illusory. Docket no. 42 at 11. It correctly points out that "[u]nder Arizona law, the validity of an arbitration clause is considered separately from the underlying contract." *Id.* (citing *U.S. Insulation, Inc. v. Hilro Constr. Co.*, 705 P.2d 490, 493–94 (Ariz. App. 1985)). It contends that the arbitration clause is not supported by consideration—or is an illusory promise—because there is no mutuality of obligation. *Id.* at 8–9. Grasso's theory is that since CVS/Caremark can "unilaterally" amend the Provider Manual, they can revoke the promise to arbitrate, which means there is no mutuality of obligation. The Court disagrees.

CVS/Caremark do not have the ability to unilaterally amend the Provider Manual and bind pharmacies to those amendments. The Provider Manual requires that CVS/Caremark give notice of the terms of any amendment and the effective date. Docket no. 23 at 2. Then, if a pharmacy does not agree to the new terms, it may simply reject the amendment by ceasing to submit claims to CVS/Caremark. *Id.* There is mutuality of obligation here. Under the current terms of the arbitration clause, *both* CVS/Caremark and their network pharmacies may compel arbitration. Docket no. 44-7 at 45 ("Arbitration with respect to a dispute is binding and <u>neither</u>

Provider nor Caremark will have the right to litigate that dispute through a court.") (emphasis added).  Even if CVS/Caremark were to amend the agreement and delete the arbitration clause, if a pharmacy was unhappy with the change, it could stop submitting claims.  Presumably still, for any dispute arising out of previous claims, *both* the pharmacy and CVS/Caremark could still compel arbitration.  And if the pharmacy did accept the amendment, *neither* the pharmacy or CVS/Caremark could compel arbitration.   The arbitration clause does create mutuality of obligation.  This is a fundamentally distinct scenario from the authority Grasso cites in its briefing; for example, in *Joudi*, the arbitration clause gave one side specific rights that the other did not have.  *Joudi v. Doerkin Properties, Inc.*, 46 F.3d 66 (5th Cir. 1995) ("Only PPI has these "optional rights" in § 16.").

Of course, it could be argued that the amendment process creates a contract-of-adhesion scenario, in which pharmacies are forced to accept an amendment or be kicked out of the network.  The Fifth Circuit already examined this very argument in *Crawford. Crawford*, 748 F.3d at 264–66.  The Fifth Circuit contemplated both the amendments and the "take it or leave it" nature of the Provider Agreement and Provider Manual, and found that neither argument rendered the arbitration clause invalid or unenforceable.  *Id.*  This Court must follow the Fifth Circuit's analysis and thus concludes that the arbitration clause is not illusory.

Additionally, it seems that the crux of Grasso's argument here—that the amendment process is unilateral—attacks the validity of the Provider Agreement and Provider Manual as a whole, not just the arbitration clause.  Allegations of the invalidity of a contract as a whole "must be submitted to the arbitrator to decide" because "the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006).  Grasso's allegations apply to the validity of the Provider Manual and

Provider Agreements in their entireties. It does not allege, for instance, that the arbitration clause alone could be unilaterally amended but that the agreements at large could not. For this reason, the standard set forth by the Supreme Court applies and Grasso's concerns regarding the validity of the Provider Manual's amendment process must be submitted to arbitration if they are to be decided.

Second, Grasso argues that the arbitration provision is invalid because it is unconscionable. Docket no. 23 at 14. In its original response to the Motion to Dismiss and Compel Arbitration, it argued that it was unconscionable because it was a contract of adhesion and cited Arizona case law to support its contention. *Id.* at 14–15. However, as explained above, the Fifth Circuit examined this very argument with respect to these very same documents applying the very same state's law (Arizona), and found that the arbitration clause was not unconscionable. *Crawford*, 748 F.3d at 264–66. This Court thus reaches the same conclusion here.

Grasso also argues that the arbitration clause is unconscionable "on the ground that its confidentiality requirement gives CVS an unfair advantage because only CVS knows the history of its prior disputes with pharmacies, while pharmacies and their attorneys cannot share their information about their disputes with CVS." Docket no. 42 at 14. Grasso maintains that since CVS is a repeat player in arbitration, it acquires institutional knowledge that the arbitration clause's confidentiality requirement prevents other parties from obtaining, and that such unfairness is unconscionable. Docket no. 23 at 15. Grasso cites two cases to support this argument. *See id.* (citing *Longnecker v. Am. Express Co.*, 23 F. Supp. 3d 1099, 1110 (D. Ariz. 2014); *DeGraff v. Perkins Coie LLP*, No. C 12-02256 JSW, 2012 WL 3074982, *4 (N.D. Cal. 2012)).

This Court finds these two cases unpersuasive. First, *Longnecker* does not stand for the proposition that all confidentiality clauses in arbitration agreements are unconscionable. Rather, in *Longnecker*, the court found that a particular confidentiality provision was substantively unconscionable. *Longnecker v. Am. Exp. Co.*, 23 F. Supp. 3d 1099, 1110 (D. Ariz. 2014). The court based its holding on California law, and specifically focused on the fact that the dispute was one between an employer and an employee. *Id.* (citing *DeGraff*, 2012 WL 3074982 at *4). Second, other Arizona cases have routinely found that confidentiality provisions contained in arbitration clauses are not unconscionable. *See, e.g., Monsanto v. DWW Partners, LLLP*, CV-09-01788-PHX-FJM, 2010 WL 234952, at *3 (D. Ariz. Jan. 15, 2010). Furthermore, as CVS/Caremark point out in their reply, the Fifth Circuit has reached the same conclusion. *Iberia Credit Bureau, Inc. v. Cingular Wireless, LLC*, 379 F.3d 159, 175–76 (5th Cir. 2004) (maintaining that the "plaintiffs' attack on the confidentiality provision is, in part, an attack on the character of arbitration itself.").

Here, Grasso is a sophisticated plaintiff, far removed from that of an individual employee suing his or her employer. This fact, combined with the Arizona and Fifth Circuit cases that find no fault with confidentiality provisions, leads this Court to conclude that the confidentiality provision does not render the arbitration clause unconscionable.

For all of the above reasons, the Court finds that there is a valid agreement to arbitrate claims between Grasso and CVS/Caremark.

2. *Does this dispute fall within the scope of those arbitration agreements?*

Even if the Court finds that the parties have a valid agreement to arbitrate, in order to successfully move for arbitration, the dispute must fall within the scope of that agreement. *Sherer*, 548 F.3d at 381. But because the parties have agreed to arbitrate arbitrability, the Court

cannot determine which of Grasso's claims fall within the scope of the Provider Manual's arbitration clause. Instead, this determination must be made by the arbitrator.

Ordinarily, the determination of whether a specific claim is subject to arbitration is a question for a court. *Crawford*, 748 F.3d at 262. "However, if the parties have clearly and unmistakably agreed to arbitrate arbitrability, certain threshold questions—such as whether a particular claim is subject to arbitration—are for the arbitrator, and not a court, to decide." *Crawford* 748 F.3d at 262 (citation omitted). "'Just as the arbitrability of the merits of a dispute depends on whether the parties agreed to arbitrate that dispute, so the question "who has the primary power to decide arbitrability" turns upon what the parties agreed about *that* matter.'" *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)) (emphasis in original). The Fifth Circuit mandates that an arbitrator, not the court, must decide arbitrability if two factors are met: (1) the parties "clearly and unmistakably" intended to delegate this power to the arbitrator, and (2) the assertion of arbitrability is not wholly groundless. *Douglas v. Regions Bank*, 757 F.3d 460, 462 (5th Cir. 2014).

a. "Clearly and Unmistakably"

First, an arbitrator, and not a court, only has the power to decide the scope of an arbitration agreement if the parties "clearly and unmistakably" intended to delegate this power to the arbitrator. *Id.* An arbitration clause "need not recite verbatim that the parties agree to arbitrate arbitrability in order to manifest clear and unmistakable agreement." *Hous. Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 765 F.3d 396, 410 n. 28 (5th Cir. 2014). Instead, express incorporation of the rules of the

arbitration service constitutes "clear and unmistakable evidence" that the parties have agreed to arbitrate arbitrability. *Crawford*, 748 F.3d at 262–63 (citing *Petrofac*, 687 F.3d at 675).

The arbitration clause in the Provider Manual incorporates the rules of the American Arbitration Association.   Docket no. 44-7 at 45 ("Unless otherwise agreed to in writing by the parties, the arbitration shall be administered by the American Arbitration Association ("AAA") pursuant to the then applicable AAA Commercial Arbitration Rules and Mediation Procedures (available from the AAA)."). As the Fifth Circuit explained in *Crawford*, incorporation of those rules into the Provider Manual "constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Crawford*, 748 F.3d at 262.  As such, the first factor is met— Grasso and CVS/Caremark have clearly and unmistakably agreed to arbitrate arbitrability.

b.  "Wholly Groundless"

Even though there is clear and unmistakable evidence that the parties have agreed to arbitrate arbitrability, an arbitrator should decide the issue only if the assertion of arbitrability is not wholly groundless. *Douglas*, 757 F.3d at 463–64.   Under federal law, assertion of arbitrability is not wholly groundless if, on the one hand, there is a plausible and legitimate argument that the arbitration agreement covers the present dispute, and, on the other hand, a plausible and legitimate argument that it does not. *Douglas*, 757 F.3d at 463.  Although such inquiry necessarily requires the court to examine the arbitration agreement, this inquiry is limited, and the resolution of the plausible and legitimate arguments regarding arbitrability must be reserved for the arbitrator—the Court's power is limited simply to determining whether or not a plausible argument exists. *Id.*

There is at least a plausible argument that the arbitration agreement covers this dispute. *See Douglas*, 757 F.3d at 463.  The arbitration clause in the Provider Manual covers "[a]ny and

all disputes between [Grasso] and Caremark . . . including but not limited to disputes in connection with, arising out of, or relating in any way to, the Provider Agreement or to Provider's participation in one or more Caremark networks or exclusion from any Caremark networks."   Docket no. 44-7 at 45.   Grasso's claims—that CVS/Caremark's audit of its pharmacies violated federal law—are directly related to the fact that Grasso is a member of the CVS/Caremark network.   Additionally, Grasso sets forth no argument on this prong of the arbitration analysis (the scope of the agreement), and instead only focuses on whether or not the agreement is valid and enforceable.   Because this Court determines that there is at least a plausible argument that this dispute is covered by the arbitration agreement, the assertion of arbitrability is not "wholly groundless."   As such, the Court has no choice but to order that the arbitrator decide any issues of arbitrability.   The arbitrator must decide whether the arbitration clause encompasses all, some, or none of Grasso's claims.

B.   Does a federal statute or policy render the claims nonarbitrable?

Having determined that Grasso and CVS/Caremark did agree to arbitrate arbitrability, the Court proceeds to the next step in the analysis.   While the Court finds that the scope of the arbitration agreement is a question for the arbitrator, the Court, for the sake of completeness, must still determine whether there is any federal statute or policy that renders an otherwise arbitrable dispute nonarbitrable.   *See Sherer*, 548 F.3d at 381.   There is none.   Neither party advances any statute or policy that could render this dispute nonarbitrable.   *See* docket nos. 23, 24, 42, 43, 44.   Instead, the federal and Arizona policies favoring arbitration prevail.

III.   **Dismissal or stay**

In their motion, CVS/Caremark ask that the Court dismiss the case if it determines that all claims should be sent to arbitration.   Docket no. 44 at 22.   Grasso requests that instead of

dismissing the case, the Court stay the action in order to enforce the outcome of arbitration. Docket no. 42 at 19.

In *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992), the Fifth Circuit acknowledged that the Federal Arbitration Act states that the "court shall stay the trial of the action until the arbitration is complete," but held that this rule was not intended to limit dismissal of a case in the proper circumstance. *Id.* at 1164. The Court held that "[t]he weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." *Id.* (emphasis in original). In such circumstances, the Court reasoned, "retaining jurisdiction and staying the action will serve no purpose." *Id.* (quoting *Sea-Land Serv. v. Sea-Land of Puerto Rico*, 636 F. Supp. 750, 757 (D.P.R. 1986)). Thus, the Court held that the district court "acted within its discretion when it dismissed th[e] case with prejudice." *Alford*, 975 F.2d at 1164.

In later cases, the Court has noted, however, that dismissal is not required; rather, the district courts have discretion to do so, and also have discretion to stay the case or dismiss without prejudice. *Apache Bohai Corp. v. Texaco China*, 330 F.3d 307, 311 & n.9 (5th Cir. 2003) (finding that the decision of the district court to stay the case pending arbitration was not an abuse of discretion); *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 679 (5th Cir. 1999) (holding that district court did not abuse its discretion by dismissing the case without prejudice in favor of arbitration).

The Federal Arbitration Act provides that the Court shall stay the case pending resolution of the arbitration upon application of a party. Federal Arbitration Act, 9 U.S.C. § 3 (2012). Grasso has asked the Court for a stay rather than dismissal. Docket no. 42 at 19. The Court will therefore exercise its discretion to stay this action pending resolution of the arbitration.

## IV.    Conclusion

For the reasons above, the Court orders all of Grasso's claims be sent to arbitration to be decided by the arbitrator.   That portion of CVS/Caremark's Motion to Dismiss and Compel Arbitration is granted.   The portion requesting the Court dismiss the case is denied and the Court exercises its discretion to stay the action.

### MOTION FOR PRELIMINARY INJUNCTION

Next, the Court considers Grasso's Motion for Preliminary Injunction.   Docket no. 26. Because this Court orders all claims be sent to arbitration, it declines to rule on the motion.   Any sort of injunctive relief should be contemplated by the arbitrator.

On one hand, Grasso argues that this Court has the discretion to issue a preliminary injunction even if it orders all claims be sent to arbitration.   Docket no. 42 at 14.   It points to the Fifth Circuit's decision in *Janvey v. Alguire* to support this argument.   *Id.* (citing *Janvey v. Alguire*, 547 F.3d 585, 593–95 (5th Cir. 2011)).   Additionally, Grasso notes that there is a split in authority among the circuit courts on the issue, and cites to a recent decision from the Southern District of Texas.   *Id.* (citing *Amegy Bank Nat'l Ass'n v. Monarch Flight II, LLC*, 870 F. Supp. 2d 441, 451-452 (S.D. Tex. 2012)).   Finally, Grasso maintains that a clause in the arbitration agreement allows either party to seek injunctive relief outside of arbitration: "The above notwithstanding, nothing in this provision shall prevent either party from seeking preliminary injunctive relief to halt or prevent a breach of this Provider Agreement in any state or federal court of law."   *Id.*

On the other hand, CVS/Caremark contend that since all claims must proceed in arbitration, the Court should decline to entertain the preliminary injunction motion.   Docket no. 43 at 1–3.   Additionally, they argue that since the parties have agreed to arbitrate arbitrability, an

arbitrator—not the Court—must decide if the exception in the arbitration clause that addresses injunctive relief allows Grasso's request for a preliminary injunction to be heard here. *Id.* at 3. CVS/Caremark also maintain that even if this Court were allowed to decide if the claim at issue fell within the scope of the exception to the arbitration clause, the claim on which Grasso seeks a preliminary injunction does not qualify, because it is not a claim about breach of the Provider Agreement or Provider Manual. *Id.* Additionally, they state that three other federal district courts have considered this very issue with these very same agreements in similar lawsuits against CVS/Caremark, and each time the court has chosen to compel arbitration and issue no ruling on a preliminary injunction motion. *Id.* at 4. Finally, CVS/Caremark argue that the cases cited by Grasso in their briefing do not require this Court to rule on the preliminary injunction motion. *Id.* We agree.

First, in *Janvey*, the Fifth Circuit merely held that a district court has the ability to rule on a motion for preliminary injunction while a motion to compel arbitration is pending. *Janvey*, 647 F.3d at 595. It expressly declined to determine whether or not "a district court divests itself of the discretion to maintain the status quo once it decides the case before it is arbitrable and, if not, what the limits of that discretion may be." *Id.* at 595 n.7. Additionally, in *Amegy*, the Southern District of Texas noted the circuit split on the issue, but merely held that a court *may* issue a preliminary injunction to preserve the status quo, and simply ruled that an injunction that was issued *before* the court considered a motion to compel arbitration would remain in effect while arbitration was pending. *Amegy*, 870 F.Supp.2d at 453.

Simply put, there is no case that would require this Court to issue a ruling on the preliminary injunction motion even though it has ordered the case proceed in arbitration. Rather, the Fifth Circuit has specifically declined to make such a ruling. This Court finds the reasoning

of the Eighth Circuit persuasive: "the judicial inquiry requisite to determine the propriety of injunctive relief necessarily would inject the court into the merits of issues more appropriately left to the arbitrator." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey*, 726 F.2d 1286, 1292 (8th Cir.1984).

It is important to note that each of the cases cited by Grasso in its argument that this Court should rule on the preliminary injunction motion pre-date *Crawford*. As such, even Grasso's arguments about the exception for preliminary injunctions contained in the arbitration clause must fail. Since the parties here have agreed to arbitrate arbitrability, both *Petrofac* and *Crawford* require that an arbitrator, not this Court, decide whether the issue that underlies the claim for preliminary injunctive relief is within the scope of the arbitration agreement or is covered by the exception. *Crawford*, 748 F.3d at 262; *Petrofac*, 687 F.3d at 675.

Additionally, even if the parties had not agreed to arbitrate arbitrability, the Court finds that the exception for preliminary injunctive relief does not cover this particular claim. The exception clause only allows a party to seek a preliminary injunction outside of arbitration "to halt or prevent a breach of the Provider Agreement in any state or federal court of law." Docket no. 44-7 at 45–46. Here, Grasso merely alleges a violation of a federal statute—ERISA—in support of their motion for preliminary injunction, not a breach of contract. Additionally, any ambiguity about the scope of an arbitration clause must be resolved in favor of arbitration. *Safer v. Nelson Fin. Group, Inc.*, 422 F.3d 289, 294 (5th Cir. 2005).

Furthermore, as CVS/Caremark note, in three other suits, plaintiffs suing CVS/Caremark (or affiliated entities) attempted to use the preliminary injunction exception in the Provider Manual in order to have the courts rule on preliminary injunctions in spite of a motion to compel arbitration. In each case, the district court declined to do so. *See, e.g., Burton's Pharmacy, Inc.,*

*et al. v. CVS Caremark Corp., et al.*, Civ. Ac. No. 1:11CV2, 2015 WL 5430354, at *11 (M.D.N.C. Sept. 15, 2015) (holding that the exception did not apply because the plaintiffs' motion for preliminary injunction was not based on a breach of contract claim).

Finally, Grasso argues that this Court should rule on the preliminary injunction motion because "the appointment of an arbitrator can take a month or two" and "CVS's termination of Annie's Provider Agreements is scheduled to occur . . . on October 29, 2015." Docket no. 42 at 30. However, as it admits, Grasso has known that CVS/Caremark were pushing it out of the network since July. Docket no. 26 at 10. In spite of this, it waited for two months to file its Motion for Preliminary Injunction. In any case, such concerns about timing cannot overcome the reasons outlined above. For the foregoing reasons, as the Court has ordered all claims be sent to arbitration, this Court declines to rule on Grasso's Motion for Preliminary Injunction. The motion is dismissed as moot.

## CONCLUSION AND ORDERS

CVS/Caremark's Motion to Dismiss and Compel Arbitration (docket no. 44) is GRANTED IN PART and DENIED IN PART. All claims are hereby ordered to arbitration, and the case is STAYED pending resolution of the arbitration. Because all proceedings in this case are stayed pending resolution of the arbitration, this case is appropriate for administrative closure. *Mire v. Full Spectrum Lending, Inc.*, 389 F.3d 163, 167 (5th Cir. 2004) ("District courts frequently make use of this device to remove from their pending cases suits which are temporarily active elsewhere (such as before an arbitration panel) or stayed (such as where a bankruptcy is pending). The effect of an administrative closure is no different from a simple stay . . ."); *see also CitiFinancial Corp. v. Harrison*, 453 F.3d 245, 250 (5th Cir. 2006).

The Clerk's office is DIRECTED to administratively close this case pending further order of the Court.  Though administratively closed, this case will still exist on the docket of this Court and may be reopened upon request of any party or on the Court's own motion.  *Mire*, 389 F.3d at 167.  CVS/Caremark are ordered to file quarterly status reports on the progress of the arbitration, beginning **February 1, 2016**.

Grasso's Motion for Preliminary Injunction (docket no. 26) is DISMISSED AS MOOT.

It is so ORDERED.

SIGNED this 28th day of October, 2015.


XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE